Mariah Gondeiro, Cal Bar No. 323683
mgondeiro@freedomfoundation.com
Shella Sadovnik, Cal Bar No. 267551
ssadovnik@freedomfoundation.com
Freedom Foundation
PO Box 552
Olympia, WA 98507
Telephone: (360) 956-3482
Facsimile: (360) 352-1874

*Attorneys for Plaintiffs and Proposed Class and Subclass*

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ANDREW STOIA**; and **MARY DELONGFIELD**, individuals, and on behalf of all similarly situated individuals;<br><br>Plaintiffs,<br><br>v.<br><br>**SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 2015**, a labor organization; **BETTY T. YEE**, in her official capacity as State Controller of the State of California; and **XAVIER BECERRA** in his official capacity as Attorney General of California,<br><br>Defendants. | Case No. 2:20-cv-01760-KJM-DMC<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, DAMAGES, AND INJUNCTIVE RELIEF FOR VIOLATION OF CIVIL RIGHTS AND TORTS.**<br><br>**DEMAND FOR JURY TRIAL** |

# INTRODUCTION

1. Plaintiffs are In-Home-Supportive Services (IHSS) Providers who bring this class action lawsuit on behalf of themselves and all others similarly situated (collectively, "the IHSS Providers"). The Services Employees International Union Local 2015 ("the Union" or "SEIU") ordered State Controller Betty Yee ("State Controller") to siphon union dues and in some cases a political contribution from the IHSS Providers' wages, despite having no authorization.

2. The First Amendment prohibits the government and unions from deducting and collecting union dues or fees from homecare providers without clear and compelling evidence the individuals consent to the deductions and agreed to waive their First Amendment right to refrain from subsidizing union speech. *See Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2486 (2018); *Harris v. Quinn*, 134 S. Ct. 2618 (2014). The Fourteenth Amendment requires a state provide sufficient due process to prevent the deprivation of property and liberty interests. *Gearhart v. Thorne*, 768 F.2d 1072, 1073 (9th Cir. 1985).

3. The IHSS Providers were deprived because no procedures protected their property (wages) and constitutional right against union speech. State Statute enabled the unauthorized taking of the IHSS Providers' wages by granting the Union completed control over the deduction procedure despite SEIU's clear financial interest. *See* Cal. Welf. & Inst. Code § 12301.6(i)(2); Cal. Gov't Code § 1153.

4. The IHSS Providers seek declaratory judgment, nominal, compensatory, and punitive damages, injunctive relief, and attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

# JURISDICTION AND VENUE

5. This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343 because the case arises under the First and Fourteenth Amendments to the U.S. Constitution as an action under 42 U.S.C. § 1983 for violation, under color of law, or rights, privileges, and immunities secured by the United States Constitution. Pursuant to § 1343, the Court may grant damages, restitution, injunctive relief, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

6. This action is an actual controversy in which the IHSS Providers seek a declaration of their rights. Under 28 U.S.C. §§ 2201 and 2202, this Court may declare the rights of the IHSS Providers and grant further necessary or proper relief based thereon, to include injunction.

7. This Court has supplemental jurisdiction over state law claims presented in this matter pursuant to 28 U.S.C. § 1367, because the claims are so related to the federal constitutional claims in this action such that they do not raise novel or complex issues of state law and do not substantially predominate over the federal claims. There are, further, no exceptional circumstances to support declining consideration of the state law claims.

8. Venue is proper in the Eastern District of California under 28 U.S.C. § 1391(b)(1) because the State Controller and the Union does business in this judicial district, and Defendants are a resident of this State (within the meaning of 28 U.S.C. § 1391(c)). Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to the claim occurred in this judicial district.

**PARTIES**

9. Plaintiff Andrew Stoia resides in Shasta County.

10. Plaintiff Mary DeLongfield resides in Los Angeles County.

11. Defendant SEIU Local 2015 is a labor organization whose headquarters are located at 2910 Beverly Boulevard, Los Angeles, California 90057.

12. Defendant Betty Yee is the State Controller of California. The State Controller is a constitutional office of the State of California and has an executive office at 300 Capitol Mall, Suite 1850, Sacramento, California 95814. Pursuant to state law, the State Controller is responsible for deducting dues from Stoia's wages. The State Controller is sued in her official capacity and solely for declaratory and injunctive relief.

13. Defendant Xavier Becerra is the Attorney General of California. Pursuant to state law, he is responsible for the enforcement of state laws, including the provisions challenged in this case. Becerra is sued in his official capacity and solely for declaratory and injunctive relief.

14. The State Controller and Becerra are collectively referred to as the "State."

## STATEMENT OF FACTS

*A. The State and the Union Work Together to Collect Union Dues from the IHSS Providers*

15. The In-Home-Supportive Service (IHSS) program offers non-medical assistance to California residents who are sixty-five (65), or younger individuals with disabilities who qualify for Medi-Cal. *See* Cal. Welf. & Inst. Code § 12300.

16. Persons enrolled in the IHSS program hire providers to assist them with daily activities in their home, such as eating and dressing. *See* Cal. Welf. & Inst. Code § 12300(c)-(d). IHSS participants can use Medi-Cal funds to pay for their providers instead of enrolling in a long-term care facility.

17. The IHSS program pays providers for their services through the State Controller. The State Controller processes and sends payments to providers by direct deposit to bank accounts or by checks. *See* Cal. Welf. & Inst. Code §§ 12302.2, 12304.4.

18. SEIU represents IHSS Providers in 21 California counties, including Shasta County and Los Angeles County, and negotiates collective bargaining agreements ("CBA") with Public Authorities across the state. *See* Cal. Welf. & Inst. Code § 12301.6(i)(2).

19. Pursuant to California Welfare and Institutions Code Section 12301.6(i)(2), the Shasta County Public Authority and SEIU negotiated and agreed to a Memorandum of Understanding (MOU) effective from August 22, 2017 through December 31, 2021.

20. Article Five (5), Section Two (2) of the MOU states, in relevant part:

> "The Union shall instruct the State to commence and continue a monthly payroll deduct of Union dues from the regular pay warrants of Providers who have authorized such deduction. The Union shall instruct the State of the dollar amount to deduct for Union dues or other authorized Union deductions, including voluntary COPE contributions, specifying the purposes(s) of the deduction. The State shall continue the make such deductions as instructed for so long as the Union provides such instruction."

21. SEIU also agreed to an MOU with the Los Angeles County Public Authority, otherwise known as the Personal Assistance Services Council ("PASC").

22. The MOU, in relevant part, states: "The Union shall instruct the State to commence and continue a monthly payroll deduction of Union dues from the regular bi-weekly pay warrants

of Providers who have authorized such deduction. The Union shall instruct the State of the dollar amount to deduct for Union dues or other authorized Union deductions…"

23. The MOU provisions are consistent with California Government Code Section 1153(a)(b). Pursuant to Section 1153(a), the State Controller must deduct dues and Committee on Political Education ("COPE," a political action committee) fees from IHSS providers in amounts prescribed by SEIU.

24. Pursuant to Section 1153(b), the State Controller must rely on SEIU's certification that they have and will maintain an authorization for IHSS providers.

B. *The Union Orders the State to Garnish Plaintiffs' Wages with No Authorization*

25. **Plaintiff Andrew Stoia** immigrated from Germany in or around 1970.

26. Mr. Stoia became an IHSS provider in or around 2003 to care for his wife, Concetta Stoia. In a series of unfortunate events, Mrs. Stoia suffered devastating back and knee injuries. She had an adverse reaction to the medicine she took to alleviate her symptoms and became legally blind.

27. The Stoias rely entirely on Mr. Stoia's homecare provider salary.

28. Mr. Stoia does not recall joining the Union, by means of signing a membership card, upon employment, or at any time.

29. The Union never solicited Mr. Stoia's membership, and Mr. Stoia never spoke to a Union official in or around the time the Union ordered the State Controller to garnish Mr. Stoia's wages.

30. Mr. Stoia does not agree with the Union's political stances, or its stances in collective bargaining. In fact, SEIU supports many political candidates and causes Mr. Stoia finds abhorrent.

31. Nevertheless, in or around 2003, SEIU directed the State Controller to deduct union dues from Mr. Stoia's bi-weekly paychecks and remit the dues to the Union.

32. In or around 2005, the State Controller also deducted money from Mr. Stoia's bi-weekly paychecks for the Union's COPE political action committee. On information and belief,

this money is explicitly earmarked for political expenditure and amounts to around $6 a month. The COPE deduction is over and above union dues paid pursuant to union membership.

33. The Union did not provide Mr. Stoia notice or an opportunity to object to the COPE deductions, even though the COPE fund is not for ordinary union expenses.

34. The only notice Mr. Stoia receives is a line on his paystub titled, "COPE FUND" or "COPE/PEOPLE." A true and correct is attached hereto as Exhibit A.

35. The Stoias had no idea how to stop the Union-related deductions, so they turned to the only entity they were familiar with: IHSS.

36. From 2003 to 2012, the Stoias lived in Alameda County and frequently drove to the IHSS Oakland office and delivered several notes to various workers in the payroll department, requesting they stop Mr. Stoia's dues deductions. After 2005, the Stoias also asked IHSS to stop the COPE deductions.

37. On December 22, 2009, Mrs. Stoia handwrote a letter to SEIU, requesting they immediately terminate Mr. Stoia's union dues and COPE political contributions. The letter also explicitly stated that Mr. Stoia "did not agree" to the contributions. A true and correct copy is attached hereto as Exhibit B.

38. The Union received the letter on December 29, 2009 but did not respond.

39. From 2012 to 2018, the Stoias lived in Solano County. They called the IHSS office in Solano County to request they stop Mr. Stoia's Union-related deductions.

40. After no success on the phone, the Stoias drove to the IHSS office in Fairfield, California. Each time they complained to employees at the office, employees met them with an apology and statement along the lines of: "We have too many clients and not enough workers."

41. In or around January 2018, an IHSS social worker named Nicole Saber came to the Stoia's house to assess Mrs. Stoia. During the assessment, the Stoias asked Nicole to stop Mr. Stoia's dues and COPE political contributions.

42. Ms. Saber promised to follow up, but the Stoias never heard back from her.

43. Around three months letter, Garrett German became Mrs. Stoia's social worker.

44. Mrs. Stoia sent a letter to Mr. German, requesting he terminate Mr. Stoia's union dues and COPE political contributions.

45. Mr. German did not respond.

46. In or around November 2018, the Stoias moved to Shasta County.

47. The Stoias made several visits to the Shasta County IHSS office located in Redding, California, requesting the termination of all Union-related deductions from Mr. Stoia's wages.

48. The IHSS office did not pass along the Stoia's requests to the Union.

49. In or around January 2020, Mrs. Stoia sent a handwritten letter to the Shasta County Social Services, insisting they terminate the Union-related deductions from Mr. Stoia's wages. A true and correct copy is attached hereto as Exhibit C.

50. The Shasta County Social Services received the letter on January 7, 2020.

51. The Union did not respond to the January letter.

52. During this same time, an IHSS social worker named Ann Marie Diaz came to the Stoia's house to assess Mrs. Stoia. The Stoias asked Diaz to stop Mr. Stoia's Union-related deductions.

53. Diaz did not address the Stoia's requests.

54. In the past seventeen (17) years, not one IHSS or SEIU employee informed Mr. Stoia of his First Amendment right not to fund union speech. It was not until the early summer of 2020, that Mr. Stoia learned independently of his First Amendment rights.

55. Around this time, Mr. Stoia spoke to a union representative named Calvin. Mr. Stoia requested Calvin stop his Union-related deductions, but Calvin claimed he could not stop the deductions until the anniversary date prescribed in Mr. Stoia's membership card.

56. Mr. Stoia subsequently asked Calvin for a copy of his purported membership card.

57. The Union never provided Mr. Stoia with his purported membership card.

58. On July 13, 2020, Mr. Stoia's legal counsel sent an email to the Union's counsel requesting a copy of his membership card.

59. Again, the Union did not provide a copy.

60. Despite the Stoia's numerous efforts to stop Mr. Stoia's union dues and COPE political contributions, the Union continued to direct the State Controller to garnish his wages until August 2020.

61. **Plaintiff Mary DeLongfield** became an IHSS provider in or around 2010.

62. Mrs. DeLongfield cares for her daughter, who suffered a near fatal auto accident in April 22, 2003, causing permanent life-altering injuries. Her daughter cannot function without a wheelchair and walker and needs daily assistance.

63. Mrs. DeLongfield does not recall joining the Union, by means of signing a membership card, upon employment, or at any time.

64. The Union never solicited Mrs. DeLongfield's membership, and she never spoke to a Union official in or around the time the Union ordered the State Controller to garnish her wages.

65. Nevertheless, in or around 2010, SEIU directed the State Controller to deduct union dues from Mrs. DeLonfield's bi-weekly paychecks and remit the dues to the Union.

66. Because the Union never solicited Mrs. DeLongfield's membership, she reasonably believed the dues deductions were mandatory.

67. Mrs. DeLongfield did not agree with the Union's political or collective bargaining activities. When she learned of her First Amendment rights in April 2020 through an IHSS Facebook group, she decided to terminate her dues deductions. On April 20, 2020, she sent a letter through certified mail to the Union, revoking her dues deductions.

68. The Union did not respond to Mrs. DeLongfield's April letter, so she sent another letter through certified mail to the Union on June 16, 2020.

69. She sent a follow up email to the Union the same day, requesting they also provide her with copies of any membership cards they had on her file. A true and correct copy is attached hereto as Exhibit D.

70. To cover her basis, she called and left a message to her payroll department in Los Angeles County, notifying them that she terminated her dues deductions.

71. She did not receive a call back.

72. On August 19, 2020, Mrs. DeLongfield's legal counsel sent a demand letter to the Union, requesting all copies of dues authorizations in her name.

73. Mrs. DeLongfield's counsel sent follow up emails to the Union's counsel on September 1, 4, and 24, requesting proof of authorization.

74. No proof of authorization was provided.

75. Despite Mrs. DeLongfield's numerous efforts to stop the dues deductions, the Union continued to direct the State Controller to garnish her wages until September 2020.

## CLASS ACTION ALLEGATIONS

76. Plaintiffs bring this lawsuit as a class action on behalf of themselves and other similarly situated IHSS providers, pursuant to Federal Rules of Civil Procedure 23(b)(1)(A), (b)(2), and alternatively 23(b)(3). The Class that the Class Representatives seek to represent are defined as follows: all IHSS providers represented by SEIU from whom the State Controller deducted union dues without proof of a written authorization executed by that provider. The Subclass includes all Class members from whom the State Controller has deducted a political assessment fee/contribution without proof of a written authorization. The Class includes everyone who comes within the class definition at any time from two years prior to the commencement of this action until the conclusion of this action. Alternatively, Plaintiffs request certification of the classes or subclass the Court deems appropriate.

77. The Class Representatives can and will fairly and adequately represent the interests of Class and Subclass members and have no interests antagonistic to them.

78. A class action may be maintained under Rule 23(b)(1)(A) for injunctive and declaratory relief because separate actions by Class and Subclass members could risk inconsistent adjudications that would establish incompatible standards of conduct for Defendants.

79. A class action may be maintained under Rule 23(b)(1)(B) for injunctive and declaratory relief because an adjudication determining the legality of the State Controller and SEIU deducting and collecting union dues and/or political assessment fees in the aforementioned

circumstances will, as a practical matter, be dispositive of the interests of all Class and Subclass members.

80. A class action may be maintained under Rule 23(b)(2) because the State Controller and SEIU, by deducting and collecting union dues from Class and Subclass members over their objections and without a valid waiver of their First Amendment rights, have acted or refused to act on grounds that apply generally to the Class and Subclass members, making injunctive relief and corresponding declaratory relief appropriate respecting the Class and Subclass as a whole.

A class action may be maintained under Rule 23(b)(3) because questions of law or fact common to the members of the Class and Subclass predominate over any questions affecting only individual members in that the important and controlling questions of law and fact are common to all members of the Class and Subclass. A class action is superior to other available methods for the fair and efficient adjudication of the controversy in as much as the individual Class and Subclass members are deprived of the same rights by Defendants' actions, differing only in the amount of money deducted – which is, for legal purposes, immaterial. The amount of money deducted is known to Defendants or can easily be calculated from Defendants' business records. The limited amount of money involved in the case of each individual's claim would make it burdensome for the Class and Subclass members to maintain separate actions.

**FIRST CAUSE OF ACTION**
**Violation of the First Amendment (42 U.S.C. § 1983)**
**(By the IHSS Providers against all Defendants)**

*Deducting union dues and political contributions from the IHSS Providers' wages pursuant to California State Welfare and Institutions Code Section 12301.6(i)(2), California Government Code Section 1153 and the Providers' respective MOU violates the First Amendment.*

81. Plaintiffs incorporates by reference and re-allege herein all Paragraphs above.

82. California Welfare and Institutions Code Section 12301.6(i)(2), California Government Code Section 1153, and the MOUs on their face and as applied, violate the IHSS Providers' First Amendment rights, as secured against state infringement by the Fourteenth Amendment and 42 U.S.C. § 1983: (a) not to associate with a mandatory representative; (b) not to

support, financially or otherwise, petitioning and speech; and (c) against compelled speech, because it authorizes and compels the State Controller to deduct union dues and political contributions from the IHSS Providers' wages even though they never clearly and affirmatively consented to the deductions by waiving their constitutional right to not fund union advocacy. *See Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2486 (2018)

83. SEIU's failure to obtain consent prior to ordering the State Controller to deduct union dues and political contributions from the IHSS Providers as required *by Knox v. Service Employees International Union, Local 1000*, 567 U.S. 298 (2012) violates the IHSS Providers' First Amendment rights.

84. SEIU's failure to provide an adequate explanation and opportunity to object to the political contributions as required by *Chicago Teachers Union, Local No. 1, AFT, AFL-CIO v. Hudson*, 475 U.S. 292 (1986), violates the Subclass' First Amendment rights.

85. Additionally, state law and the MOUs unconstitutionally authorize the State Controller to deduct union dues and political contributions from the IHSS Providers' wages without the necessary procedural safeguards. *See* Cal. Welf. & Inst. Code § 12301.6(i)(2); Cal. Gov't Code § 1153(b). The State Controller is not required to obtain legally valid consent from the IHSS Providers before deducting dues or political contributions from their wages. Instead, the State Controller relies entirely on the Union, a financially interested party.

86. Defendants failed to promptly and timely remedy their First Amendment violation by stopping all dues and political contributions and restoring the IHSS Providers' lawfully earned wages.

87. No compelling state interest justifies this infringement on the IHSS Providers' First Amendment rights.

88. California State Welfare and Institutions Code Section 12301.6(i)(2) and California Government Code Section 1153 are significantly broader than necessary to serve any possible alleged government interest.

89. California State Welfare and Institutions Code Section 12301.6(i)(2) and California

Government Code Section 1153 are not carefully or narrowly tailored to minimize the infringement of free speech rights.

**SECOND CAUSE OF ACTION**
**Violation of the Fourteenth Amendment (42 U.S.C. § 1983)**
**(By the IHSS Providers against all Defendants)**

*The Defendants violated the Fourteenth Amendment by failing to provide adequate procedural safeguards.*

1. Plaintiffs incorporates by reference and re-allege herein all Paragraphs above.

2. The IHSS Providers have a property interest in the wages they have earned. *See Gearhart v. Thorne*, 768 F.2d 1072, 1073 (9th Cir.1985); *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Withholding union dues is akin to a garnishment, attachment or prejudgment seizure such as have been repeatedly subjected to due process review. *See Fuentes v. Shevin*, 407 U.S. 67 (1972)*; D.H. Overmyer Co. Inc. of Ohio v. Frick Co.*, 405 U.S. 174 (1972); *Sniadach v. Family Fin. Corp. of Bay View*, 395 U.S. 337 (1969).

3. The IHSS Providers also have a liberty interest protected by the First Amendment to not have their wages diverted to union coffers absent their consent.

4. Defendants, acting under color of law, knowingly, recklessly, or because of callous indifference, deprived the IHSS Providers of their property interest in their wages and their First Amendment right to be free from supporting a union with which they have fundamental and profound disagreements.

5. The State of California, as the IHSS Providers' employer, has a duty to implement and abide by adequate procedural safeguards to protect employees' rights; and the Union directing the State Controller to withdraw dues and political assessments from IHSS Providers' wages, has a duty to implement and abide by adequate procedural safeguards to protect employees' rights.

6. The Union has failed to adequately train, vet, monitor, or otherwise instruct union personnel to avoid the deprivation of the IHSS Providers' wages and First Amendment right to not pay money to a union.

7. Defendants failed to promptly and timely remedy their constitutional violations by

stopping all dues and assessment withdrawals and restoring the IHSS Providers' lawfully earned wages.

### THIRD CAUSE OF ACTION
### Unjust Enrichment
### (By the IHSS Providers against the Union)

*The Union committed the tort of unjust enrichment under California law when it wrongfully withheld union dues and/or political contributions from the IHSS Providers.*

8. Plaintiffs incorporates by reference and re-allege herein all Paragraphs above.

9. The Union wrongfully confiscated the IHSS Providers' wages.

10. As a result of the Union's wrongful acts and omissions, the Union has been unjustly enriched to the detriment of the IHSS Providers.

11. The Union knowingly benefited from, and was aware of, receiving the IHSS Providers' money in the form of union dues and political contributions.

12. The circumstances of the Union's scheme make it unjust for SEIU to retain the benefit of the IHSS Providers' seized wages.

13. As a direct and proximate result of the Union's conversion of the IHSS Providers' wages, the Providers have suffered economic damages in the form of lost wages.

### FOURTH CAUSE OF ACTION
### Conversion
### (By the IHSS Providers against the Union)

*The Union committed the tort of conversion under California law when it wrongfully interfered with the IHSS Providers' lawfully earned wages.*

14. Plaintiffs incorporates by reference and re-allege herein all Paragraphs above.

15. The Union willfully interfered with the IHSS Providers' rightful receipt of their full wages by ordering the State Controller to deduct dues and political contributions from their wages without written authorization.

16. The Union's intentional and deceitful acts enabled it to dispose of the wages collected in a manner inconsistent of the IHSS Providers' property rights in their wages.

17. The Union's unauthorized collection of the IHSS Providers' wages caused them

monetary damages in the form of lost wages.

**PRAYER FOR RELIEF**

WHEREFORE, the IHSS Providers pray this Court grant the relief requested herein, specifically that the Court render the following judgment in their favor and against Defendants:

i. **AS TO COUNT I:** For entry of a Declaratory Judgment that California State Welfare and Institutions Code Section 12301.6(i)(2), California Government Code Section 1153 and the MOUs, on their face and as applied, violate the First Amendment because they permit and compel the State Controller to deduct union dues and political contributions from the IHSS Providers' wages without legally valid consent, and/or because the procedure is entirely controlled by SEIU, an interested party;

ii. **AS TO COUNT II:** For entry of a Declaratory Judgment that Defendants failed to observe procedural safeguards necessary to protect the IHSS Providers' property interest and First Amendment rights, by creating an environment conducive to such violations;

iii. **AS TO COUNTS I AND II:** Enjoining Defendants from agreeing to and enforcing a procedure for dues and COPE political contributions and objections to union membership/dues deductions that violates the First and Fourteenth Amendment. 28 U.S.C. §§ 2201 and 2202;

iv. **AS TO COUNTS I, AND II:** Awarding compensatory and punitive damages in an amount equal to all union dues and COPE political contributions deducted and collected from the IHSS Providers' wages going back to the extent of the relevant statute of limitations with interest, or alternatively restitution or nominal damages, and restitution;

v. **AS TO COUNTS III, AND IV:** Awarding compensatory and punitive damages for the torts of unjust enrichment and conversion, or alternatively restitution;

vi. **Costs and attorneys' fees:** For an award to Plaintiffs of their costs and reasonable attorneys' fees pursuant to the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988;

vii. **Interest:** For pre-judgment and post-judgment interest as permitted by law.

1  **viii.** **Other relief:** For such other and additional relief as the Court may deem just and proper.

Dated: October 21, 2020.

FREEDOM FOUNDATION

By: /s/ Mariah Gondeiro
Mariah Gondeiro, Cal Bar No. 323683
mgondeiro@freedomfoundation.com
Freedom Foundation
PO Box 552
Olympia, WA 98507
Telephone: (360) 956-3482

Shella Sadovnik, Cal Bar No. 267551
ssadovnik@freedomfoundation.com
Freedom Foundation
PO Box 552
Olympia, WA 98507
Telephone: (360) 956-3482
Facsimile: (360) 352-1874

*Attorneys for Plaintiffs and Proposed Class and Subclass*