UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Andrew Stoia, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>Betty Yee, et al.,<br><br>    Defendants, | No. 2:20-cv-01760-KJM-DMC<br><br>ORDER |

Two In Home Supportive Services (IHSS) providers bring this § 1983 putative class action against SEIU Local 2015, California State Controller Betty Yee and Attorney General of California Rob Bonta,[1] alleging violations of their First and Fourteenth Amendment rights to free speech and freedom of association, and their procedural due process rights as well.  Plaintiffs allege they never authorized union dues deductions and the State Controller deducted dues from their wages without their consent.  The State defendants and SEIU Local 2015 filed motions to dismiss.  **The motions are granted.**

/////

---

[1] Rob Bonta has served as the Attorney General of California since April 23, 2021.

1

**I.     BACKGROUND**

Plaintiffs are in-home care providers enrolled in California's Medicaid (Medi-Cal) Program, In Home Supportive Services (IHSS).  First. Am. Compl. ¶¶ 1, 15–16, ECF No. 14. Plaintiff Andrew Stoia became an IHSS provider in 2003 to care for his wife, *id*. ¶ 26, and plaintiff Mary DeLongfield in 2010 to care for her daughter, *see id*. ¶ 61.

Both Stoia and DeLongfield live in counties in which IHSS providers are represented by SEIU Local 2015 under a collective bargaining agreement.  *See* First Am. Compl. ¶¶ 19–22. California law authorizes the State Controller to "make any deductions from the wages of [IHSS] personnel . . . , who," like Stoia and DeLongfield, "are employees of a public authority," if the deductions are "agreed to by that public authority in collective bargaining with the designated representative of the [IHSS] personnel."  Cal. Welf. & Inst. Code § 12301.6(i)(2); First. Am. Compl. ¶ 17.  In administering these IHSS programs, the State Controller must "[m]ake, cancel, or change a deduction or reduction at the request of the . . . organization authorized to receive the deduction or reduction."  Cal. Gov't Code § 1153(a).  The State Controller must also "[o]btain a certification from any . . . employee organization . . . requesting a deduction . . . that they have and will maintain an authorization, signed by the individual from whose salary or wages the deduction or reduction is to be made."  *Id.* § 1153(b).  "An employee organization that certifies that it has and will maintain individual employee authorizations shall not be required to provide a copy of an individual authorization to the Controller unless a dispute arises about the existence or terms of the authorization."  *Id.*

Plaintiffs allege they never joined the SEIU and never authorized dues deductions.  First. Am. Compl. ¶¶ 28–30, 63–64.  Despite not authorizing SEIU Local 2015 to deduct dues from their wages, plaintiffs allege the union directed the State Controller to deduct money from their paychecks.  *Id*. ¶¶ 31–34, 65.  Both attempted to stop the deductions.  First, over the years, unaware of the correct process to stop union-related deductions, Stoia contacted various county IHSS offices to request they stop dues deductions, but he did not contact SEIU.  *Id*. ¶¶ 36, 39–41, 44, 47, 49, 52.  In 2009, Stoia's wife did handwrite a letter to SEIU, but it appears not to have been delivered to the SEIU.  *Id*. ¶ 37.  The letter is date-stamped December 22, 2009 by a

2

department for "Adult & Aging." *See* Ex. B, ECF No. 14-2. SEIU has no record of receiving the letter, and the stamp "Adult & Aging" does not correspond to any stamp used by SEIU; the union has no department by that name. *See* Csekey Decl. ¶ 6, ECF No. 17-2. In 2020, Mr. Stoia spoke with a SEIU representative and requested it stop all union related deductions. First. Am. Compl. ¶ 55. Second, DeLongfield alleges she first learned dues deductions were not mandatory in April 2020. *Id.* ¶ 66. She sent SEIU letters requesting it revoke her dues deductions in April and June. *See id.* ¶ 67.

SEIU eventually cancelled plaintiffs' union memberships and directed the State Controller to stop union dues deductions. *Id.* ¶¶ 32, 60, 75. On July 17, 2020, the State Controller ceased deducting union dues and contributions for SEIU's Committee on Political Education (COPE) from Stoia's wages. *See* Csekey Decl. ¶ 10. On August 24, 2020, the State Controller ceased union dues deductions from DeLongfield's paychecks. *Id.* ¶ 16. Soon after the State stopped deducting union dues and fees, plaintiffs brought this suit under 42 U.S.C. § 1983 on behalf of themselves and a putative class, alleging deprivation of their First Amendment rights to refrain from subsidizing the union's speech through dues, without written consent as provided in *Janus v. AFSCME*, 138 S. Ct. 2448 (2018). First. Am. Compl. ¶ 82.

Finally, plaintiffs assert two state law claims against SEIU: (1) Unjust enrichment for allegedly confiscating plaintiffs' wages, *see id.* at 13:9–10[2], and (2) Conversion by "ordering the State Controller to deduct dues" and COPE fees from plaintiffs' wages "without written authorization." *Id.* at 13:15–16. Plaintiffs seek both prospective and retrospective relief. *Id.* at 14 (Prayer for Relief).

State defendants and SEIU Local 2015 filed separate motions to dismiss under Rule 12(b)(1) and Rule 12(b)(6). SEIU Mot. to Dismiss (SEIU MTD), ECF No. 17; State defendants Mot. to Dismiss (AG MTD), ECF No. 18. Plaintiffs opposed the motions, which are fully briefed. *See* Opp'n, ECF No. 30; SEIU Reply, ECF No. 31; AG Reply, ECF No. 32. On May 7, 2021, the court held a videoconference hearing on the motions. Mariah Gondeiro appeared for

---

[2] The paragraph numbering in the First. Am. Compl. begins with "1" on page 11. For clarity, the court cites to those sections of the First. Am. Compl. with page and line numbers.

1 plaintiffs; Ryan Hanley appeared for the state defendants; and Scott Kronland, Stacey Leyton and
2 Bronwen O'Herin appeared for SEIU.  The court submitted the matters after hearing.  Minutes,
3 ECF No. 33.  Both motions overlap substantially, so the court addresses them together here.

**II.   STANDING**

The State defendants argue plaintiffs lack standing because there is no concrete "injury in fact" and the Eleventh Amendment bars any claims for damages against State defendants.  *See* AG MTD at 14–15.  They argue that all deductions had ceased by the time Stoia and DeLongfield filed this lawsuit, and neither Stoia nor DeLongfield allege any expectation that deductions from their wages will resume.  *See id.*  For these same reasons, SEIU Local 2015 argues plaintiffs lack standing to seek injunctive relief on behalf of themselves or any class.  *See* SEIU MTD at 10.

**A. Legal Standard**

To establish standing, plaintiffs bear the burden of establishing three elements: (1) they suffered an injury in fact, (2) the defendants caused that injury, and (3) it is likely the injury will be redressed by a favorable judicial decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  An injury in fact is the "invasion of a legally protected interest" that is "concrete and particularized" and "actual and imminent," not "conjectural or hypothetical." *Van Patten*, 847 F.3d at 1042 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)).  When defendants have voluntarily ceased the challenged conduct before a lawsuit is filed, plaintiffs must show "there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive."  *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953).

**B. Analysis**

Here, the challenged deductions stopped before this lawsuit began, and plaintiffs have not alleged or shown any future violations are more than just a possibility.  SEIU, by contrast, has presented the declaration of its Member Services Director, Tom Csekey, explaining the union membership department has "flagged [Stoia's and DeLongfield's] names in its database" and any

4

1  future dues authorization in their names will be brought to Mr. Csekey's attention for "review and
2  confirmation before any action is taken to process." Csekey Decl. ¶¶ 12, 18.

3  Contrary to plaintiffs' argument in opposition, the court may consider Csekey's
4  declaration as evidence that plaintiffs do not have standing. Defendants' motions present a
5  factual challenge; that is, they challenge the truth of the complaint's allegation that Stoia and
6  DeLongfield have presented the court with an "actual" controversy. *See* First Am. Compl. ¶ 6;
7  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In resolving a factual
8  attack on jurisdiction, the district court may review evidence beyond the complaint without
9  converting the motion to dismiss into a motion for summary judgment." *Id.* And contrary to
10 plaintiffs' argument, no unresolved jurisdictional question is so intertwined with the merits such
11 that the court must consider the standard described in *Bell v. Hood*, 327 U.S. 678 (1946) and *Sun
12 Valley Gasoline, Inc. v. Ernst Enterprises*, 711 F.2d 138 (9th Cir. 1983). The factual question
13 here, whether deductions were ongoing at the time the case was filed, is independent of the
14 plaintiffs' claims that the statutory regime is unconstitutional.

15 At hearing plaintiffs invoked the case of *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 794
16 (2021), arguing it stands for the proposition that a prayer for nominal damages as they seek
17 against SEIU satisfies the redressability element necessary for Article III standing including in
18 cases involving Eleventh Amendment immunity. Nominal damages can be awarded when a
19 defendant is liable for some harm, but plaintiffs cannot prove an actual injury. *See Farrar v.
20 Hobby*, 506 U.S. 103, 103 (1992). In any event, plaintiffs mischaracterize the Court's decision in
21 *Uzuegbunam*, in which the Court held a "request for redress in the form of nominal damages does
22 not guarantee entry to court . . . [because] the plaintiff must establish the other elements of
23 standing and satisfy all other relevant requirements, such as pleading a cognizable cause of
24 action." 141 S. Ct. at 794.

25     **C. Mootness Argument**

26 Plaintiffs also argue the case is not moot because the State and SEIU could make the same
27 union-related deductions from another person's wages, relying on *City of Los Angeles v. Lyons*,
28 461 U.S. 95, 101–102 (1983). They contend the absence of any independent verification

5

1 requirements or State involvement creates a likelihood of repeated abuse by the union, a
2 "financially interested party," without any independent verification by the State Controller. First
3 Am. Compl. ¶ 85. This argument confuses standing and mootness. Mootness comes into play
4 only if the plaintiffs had standing "at the commencement of the litigation." *Friends of the Earth,*
5 *Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). "[I]f a plaintiff lacks standing
6 at the time the action commences, the fact that the dispute is capable of repetition yet evading
7 review will not entitle the complainant to a federal judicial forum." *Id.* at 191. "[T]he mootness
8 exception for disputes capable of repetition yet evading review . . . will not revive a dispute which
9 became moot before the action commenced." *Renne v. Geary*, 501 U.S. 312, 320 (1991). This
10 case is therefore different from others, such as *Belgau v. Inslee*, in which the plaintiffs had
11 standing when the case began. *See* 975 F.3d 940, 949 (9th Cir. 2020).

### D. Eleventh Amendment

Additionally, as the State defendants point out, the Eleventh Amendment bars any and all claims against the State and its officials, with only a narrow exception under *Ex Parte Young*, 209 U.S. 123 (1908), providing for claims against State officials where plaintiffs seek prospective injunctive relief to remedy an imminent or ongoing violation of federal law. Here, as noted plaintiffs are no longer having union dues or political fees deducted from their wages. *See* First. Am. Compl. ¶¶ 60, 75. The claims against the State defendants thus also are subject to dismissal in their entirety as barred by the Eleventh Amendment, with no applicable exception available under *Ex Parte Young* given that plaintiffs do not have standing to seek prospective relief. *See, e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984); *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 669 (1999).

### E. Conclusion

In sum, plaintiffs do not have standing to seek prospective relief against the State defendants or SEIU. The court thus turns to SEIU's motion to dismiss the plaintiffs' retrospective claims under Rule 12(b)(6).

### III.   MOTION TO DISMISS

####    A.   Legal Standard

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party." *Steinle v. City & Cty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019). If the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations elements do not alone suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555). This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense." *Id.* at 679.

####    B. State Action

To state a § 1983 claim, plaintiffs must show SEIU deprived them of a right secured by the Constitution "under color of state law." *Naffe v. Frey*, 789 F.3d 1030, 1036 (9th Cir. 2015) (citation omitted). First, the court asks "whether the claimed deprivation has resulted from the exercise of a right or privilege having its source in state authority," and second, whether defendant "may be appropriately characterized as [a] 'state actor[].'" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982). State action exists only when the answers to both questions is "yes." *See Collins v. Womancare*, 878 F.2d 1145, 1151 (9th Cir. 1989) (citing *Lugar*, 457 U.S. at 937–39).

First, plaintiffs' claimed constitutional harm stems from the State Controller's reliance on the union for certification of an employees' authorization for dues deductions. The Controller is

7

1  not separately required "to obtain legally valid consent from the IHSS Providers before deducting
2  dues." *See* First. Am. Compl. ¶¶ 83–85.  The source of the alleged constitutional harm is not a
3  state statute or policy that has "so far insinuated itself into a position of interdependence" with the
4  non-governmental party, *Belgau,* 975 F.3d at 947, but rather the allegedly wrongful conduct
5  originating with the union's authorization of dues, an exclusively private act.

6  Second, although there is a connection between plaintiffs' alleged constitutional violation
7  and state action, the union's allegedly false representations to the State Controller do not show
8  action in concert with the state.  Under analogous circumstances, courts within the Ninth Circuit
9  have repeatedly found a union's authorization of dues, even if fraudulently obtained, does not
10 transform the union's exclusively private act into state action under any conceivable test.  *See,*
11 *e.g.*, *Semerjyan v. Serv. Emps. Int'l Union Loc. 2015*, 489 F. Supp. 3d 1048, 1058 (C.D. Cal.
12 2020) (rejecting nearly identical argument regarding § 12301.6(i)(2); clarifying "Union is not a
13 state actor under the public function test . . . or the joint action test"); *Quezambra v. United*
14 *Domestic Workers of Am. AFSCME Loc. 3930*, 445 F. Supp. 3d 695, 704 (C.D. Cal. 2020) (same;
15 union's deduction of membership dues does not meet any of the four tests); *Quirarte v. United*
16 *Domestic Workers AFSCME Local 3930*, 438 F.Supp.3d 1108, 1115-17 (S.D. Cal. 2020) (same).
17 As this court previously has concluded, these decisions are well-reasoned.

18 Specifically, in *Polk v. Yee*, No. 18-2900, 2020 WL 4937347, at *4 (E.D. Cal. Aug. 24,
19 2020), this court specifically found the State Controller's fee deduction on behalf of a union did
20 not render the union a state actor under the joint action test.  *See also Kurk v. Los Rios Classified*
21 *Emps. Ass'n*, No. 2:19-CV-00548, 2021 WL 2003134, at *5 (E.D. Cal. May 19, 2021) (finding
22 same).  Allegations that the State Controller "relied entirely on the Union, a financially interested
23 party," First. Am. Compl. ¶ 85, to deduct union dues and political contributions from plaintiffs'
24 wages are the type of "passive acquiescence" that does not create state action.  *See Bain v.*
25 *California Tchrs. Ass'n*, 156 F. Supp. 3d 1142, 1153 (C.D. Cal. 2015) (explaining "generalized
26 allegation of a wink and a nod understanding between the [private actor and government actor]
27 does not amount to an agreement or a conspiracy to violate [plaintiffs'] rights.") (citing *Brunette v.*

8

*Humane Soc'y of Ventura Cty.*, 294 F.3d 1205, 1212 (9th Cir. 2002)).  In *Polk* and *Kurk,* this court relied on *Bain, see, e.g.*, *Kurk*, 2021 WL 2003134, at *5, and it continues that reliance here.

For the reasons reviewed above, SEIU is not a state actor under § 1983, and all three of plaintiffs' § 1983 claims against it must be dismissed.

### C. Leave to Amend

If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . ." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 962 (9th Cir. 2016).  However, leave to amend need not be granted if amendment would be futile.  *See Garmon v. County of L.A.*, 828 F.3d 837, 842 (9th Cir. 2016).  Here, no amendment can overcome plaintiffs' lack of standing with respect to the State defendants or SEIU such that they can seek prospective relief or to pursue their § 1983 claims against SEIU.  The court therefore dismisses all the federal claims without leave to amend.

### D. State Law Claims

On this record, the court declines to exercise its discretion under 28 U.S.C. § 1367(c)(2) to exercise supplemental jurisdiction over plaintiffs' claims for unjust enrichment and conversion.  *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right.").  The court dismisses these claims without prejudice so plaintiffs may refile them in state court if they choose.

## IV.  CONCLUSION

**The motions to dismiss are granted**.  This order resolves ECF Nos. 17 &18.  The case is closed.

IT IS SO ORDERED.

DATED:  August 27, 2021.

CHIEF UNITED STATES DISTRICT JUDGE

9